```
 1                UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
 2                    ORLANDO DIVISION


 3              CASE NO:  6:09-CR-86-ORL-35KRS


 4    United States of America,


 5                      Plaintiff,


 6    vs.


 7    Donald S. Hammalian, Jr.


 8                      Defendant.
      _____

 9


10                 WEDNESDAY, JANUARY 6, 2010
                        SENTENCING HEARING
11            BEFORE THE HONORABLE MARY S. SCRIVEN
                  UNITED STATES DISTRICT JUDGE
12    _____


13


14    Appearances:


15    Counsel for Government:
      Carlos Perez-Irizarry, AUSA
16


17    Counsel for Defendant:
      Robert Leventhal, Esq.
18


19


20


21


22


23    Koretta Stanford, RPR-CRR
      Official Court Reporter
24
      Proceedings Recorded Stenographically
25    with Computer-aided Transcription
```

```
 1                   P R O C E E D I N G S

 2             (Convened at 11:11 a.m.)

 3             THE COURT:  Good morning.  Please call the case.

 4             DEPUTY CLERK:  United States of America versus

 5   Donald Hammalian, Jr.; case number 6:09-CR-86-Orlando-35KRS.

 6             Counsel for the government, your appearance and the

 7   parties at your --

 8             MR. PEREZ:  Good morning, Your Honor.  Carlos Perez

 9   for the United States.  To my right, Special Agent James Miley

10   with U.S. Immigration and Customs Enforcement.

11             THE COURT:  Good morning.

12             DEPUTY CLERK:  And for Mr. Hammalian.

13             MR. LEVENTHAL:  Good morning, Your Honor; Robert

14   Leventhal for Donald Hammalian.  Mr. Hammalian is before the

15   Court, and I'm being assisted by Joseph Fisher at the far end

16   of the table.

17             THE COURT:  Good morning.

18             MR. LEVENTHAL:  Good morning.

19             THE COURT:  Please swear the defendant.

20             DEPUTY CLERK:  Mr. Hammalian, if you'd please stand

21   and raise your right hand.  Do you solemnly swear the

22   testimony you'll give in this case will be the truth, the

23   whole truth, and nothing but the truth, so help you God?

24             THE DEFENDANT:  I do.

25             DEPUTY CLERK:  Please state your name for the
```

1     record.

2              THE DEFENDANT:  My name is Donald Steven Hammalian,

3     Jr.

4              DEPUTY CLERK:  Please take a seat.

5              THE COURT:  Sir, you are now under oath.  You must

6     give truthful answers to the questions that are asked.  If you

7     give false answers, you face penalties of perjury, false

8     statement, or obstruction of justice.  Do you understand that?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  At the same time, it's not this Court's

11    purpose to induce you to give false answers or mislead you in

12    any way.  So, if you don't understand what I'm saying to you

13    or if you need to speak with your lawyer, stop me at any time

14    and ask for clarification or an opportunity to speak with

15    counsel.  Do you understand that?

16             THE DEFENDANT:  Yes, Your Honor, thank you.

17             THE COURT:  All right.  We are here for the purpose

18    of addressing the matter of sentencing with this defendant.

19    Are there any preliminary issues the Court needs to address to

20    either party?  From the government?

21             MR. PEREZ:  No, Your Honor.

22             THE COURT:  From the defense?

23             MR. LEVENTHAL:  No, Your Honor.

24             THE COURT:  All right.

25             Mr. Hammalian, sir, on October the 9th, 2009, you

1    entered a plea of guilty to Count 1 of this indictment, which

2    charged you with possession of child pornography in violation

3    of Title 18, United States Code, Sections 2252(a), (a)(5)(B),

4    and (b)(2).  You can remain seated.  We've now reached the

5    stage in the proceedings where it is my duty to address

6    several questions to you and to your lawyer and to counsel for

7    the government.

8              Have each of you had the opportunity to read and

9    discuss the presentence report, and do you have any objection

10   to the factual accuracy or the application of the guidelines?

11   From the government?

12             MR. PEREZ:  No objections, Your Honor.

13             THE COURT:  From the defense?

14             MR. LEVENTHAL:  Your Honor, the only objections that

15   have been made have been stated in writing, provided to the

16   Probation Office, and the Court will have a copy of those, and

17   I can address those at any appropriate time.

18             THE COURT:  This will be that time.

19             MR. LEVENTHAL:  Okay.  Thank you, ma'am.

20             Approach the podium, Your Honor?

21             THE COURT:  You may.

22             MR. LEVENTHAL:  Thank you, Your Honor.

23             Probation Office provided an addendum on some

24   matters relating to where the defendant was raised.  Those

25   issues do not have any impact on the guidelines, and they were

1    taken care of.  Last date was December 18th, I think, there

2    was an addendum.  And the only issue that was remaining, and I

3    brought this to the attention of the U.S. Probation Office and

4    to the government, is that at page 3, paragraph 21 of the

5    presentence report, the specific offense characteristics

6    dealing with the use of a computer guideline, 2G2.2(b)(6).

7            I raised the issue to the Probation Office that

8    there are courts around the United States and one district

9    judge within the Orlando Division of the Middle District of

10   Florida, at least one, that has declined to enhance the base

11   offense level by the two levels of the special offense

12   characteristics of use of a computer.

13           I don't have specific data beyond the fact that I

14   know that that has occurred in some cases for Judge Antoon,

15   and I just asked that the Probation Office raise that to the

16   Court.  I realize that there is case law that supports the

17   position that Probation has taken and that the government will

18   probably take that supports the two-level enhancement.  I ask

19   that the Court please consider not imposing that two-level

20   enhancement for the reason that it appears that there are

21   evolving issues within the court system that have caused some

22   jurists not to impose that.

23           In this case, I don't think there are any special

24   circumstances at all, other than the fact that the defendant

25   would have had to use the computer to commit the offense as

1    charged.  And other than that, I have further argument of why

2    there aren't special circumstances that make this an egregious

3    case.  It is not.  And I can address those, if you think this

4    is the appropriate time, Your Honor.

5            THE COURT:  Let me hear from the government with

6    respect to the question of the enhancement.

7            MR. PEREZ:  Your Honor, not to belabor the issue, I

8    think that we agree that the application of the enhancement is

9    appropriate.  The government, however, recognizes that there

10   is a division within this district court not imposing this

11   enhancement and that there is case law throughout the United

12   States in other districts not imposing the enhancement.

13   However, on the other hand, there are other cases supporting

14   the application of this enhancement under similar

15   circumstances.

16           THE COURT:  Thank you.

17           Now, the issue concerning the number of images has

18   been resolved referenced in your December 8, 2009, letter?

19           MR. LEVENTHAL:  The issue has been resolved to the

20   defendant's satisfaction.  It does not, as I reported to the

21   probation officer, does not change the guideline level,

22   because it's still more than 600 images, but it correctly

23   reflects --

24           THE COURT:  Thank you.

25           MR. LEVENTHAL:  -- the double counting.

1                THE COURT:  All right.

2                MR. LEVENTHAL:  Your Honor, as to the calculations

3     that have been arrived at by Probation, I have no further

4     comments at all.  The calculations are, indeed, correct under

5     the guidelines.  So other than my argument as to paragraph 21,

6     that's all I have on application of the guidelines.

7                THE COURT:  All right.

8                Now, you said you would like to make other

9     statements with respect to the 3553(a) factors?

10               MR. LEVENTHAL:  At the appropriate time, Your Honor.

11    I don't know if this would be considered allocution or issues

12    that relate to the defendant's background and what has

13    happened in his life.

14               THE COURT:  If they relate to the factors of his

15    characteristics and so forth, I'll take that in a few minutes.

16               MR. LEVENTHAL:  Okay.  And let me address that at

17    this time.  Your Honor --

18               THE COURT:  Well, hold on a second.  Does it relate

19    to the 3553(a) factors or is it something else you want to

20    say?

21               MR. LEVENTHAL:  I think it relates to those factors,

22    Your Honor.

23               THE COURT:  All right.  Just give me a minute, then.

24               MR. LEVENTHAL:  I'm taking a liberal reading that I

25    give to it.  It may be that you don't agree with my

1    interpretation, but there are factors that I would like to

2    raise on the record.

3             THE COURT:  All right.  Well, just give me a minute.

4             This Court has reviewed the statement of the parties

5    with respect to this matter.  And there being no objections to

6    the factual statements contained in the presentence report,

7    the Court adopts those statements as its findings of fact and

8    determines that the advisory guidelines are properly

9    calculated, except to the extent of the enhancement increasing

10   the offense level to 28 based upon sort of a growing authority

11   around the courts surrounding the effect of double counting of

12   the use of the computer for the offense type charged here,

13   which is possession of these images by a computer.

14            The Court, therefore, reduces the Total Offense

15   Level to 26.  This remains a Criminal History Category of I.

16   This would result in a guideline range calculated between 63

17   and 78 months incarceration.  The supervised release period

18   would remain the same, five to life.  No restitution

19   applicable.  $12,500 to $125,000 as to the applicable fine,

20   and a $100 special assessment due immediately.

21            Are there any victims present in the courtroom?

22            MR. PEREZ:  No, Your Honor.

23            THE COURT:  Does the government wish the Court to

24   read aloud the victim statements filed or is it sufficient to

25   consider those statements on the record?

1          MR. PEREZ:  No, Your Honor.  I'm not asking the

2     Court to read them into the record.

3          THE COURT:  All right.  The Court would, though,

4     reflect that it has read in complete detail the victim

5     statements submitted as a part of the presentence report.

6     This is for the edification of those victims whose lives

7     continue to be affected by this horrendous offense of the

8     viewing and taking pleasure in their rape and abuse by a

9     person such as this defendant presented before this court.

10         Now, do you know of any reason why the Court should

11    not now proceed with the imposition of sentence and does

12    anyone wish to make a statement or present any information in

13    mitigation or in allocution?

14         MR. PEREZ:  No, Your Honor.

15         MR. LEVENTHAL:  Your Honor, there's no reason why

16    the Court should not proceed to the sentencing of the

17    defendant.  I do have statements from three individuals that

18    are present in court that I would like to have them address

19    the Court, and then I would like to address the Court also.

20    And the order that I have chosen is Don Hammalian, the

21    defendant's father, is present.  And if he could step forward,

22    he would like to address the Court, Your Honor.

23         THE COURT:  He's going to say something different

24    than what he has said in his four-page letter to the Court?

25    Because I've read his letter in total.  Does he wish to make

1    an additional statement?

2            MR. LEVENTHAL:  Some of this may be duplication, but

3    it's exactly how he feels in words.  And the letter, I think,

4    is very complete, and I thought it covered the issues.  I

5    can't tell you -- I heard what he's going to say.  He may have

6    changed his mind since yesterday, but his statements will be

7    less than a minute and a half, Your Honor.

8            THE COURT:  He can come forward and be sworn.

9            Please come forward, sir, to be sworn.

10            DEPUTY CLERK:  Sir, if you'd please step up into the

11    witness box and remain standing.  Sir, please raise your right

12    hand.  Do you solemnly swear the testimony you'll give in this

13    case will be the truth, the whole truth, and nothing but the

14    truth, so help you God?

15            >> So help me God.

16            DEPUTY CLERK:  Please state your name for the

17    record.

18            >> Donald Steven Hammalian.

19            DEPUTY CLERK:  And spelling your last name.

20            >> H-a-m-m-a-l-i-a-n.

21            DEPUTY CLERK:  Please take a seat.

22            THE COURT:  Thank you, sir.  You may be seated.

23            >> Be seated?

24            THE COURT:  Yes, sir.

25            MR. LEVENTHAL:  If you'd put that microphone -- and

1    speak loudly so it can be picked up throughout the courtroom.

2              >> Yeah.

3              THE COURT:  Mr. Hammalian, you are under oath.  You

4    have to give truthful answers to any questions that are asked,

5    and your statements must be true so that you don't face

6    penalties of perjury, false statement, or obstruction of

7    justice.  Do you understand that?

8              >> Yes.

9              THE COURT:  You may proceed.

10             >> Thank you, Your Honor.

11             MR. LEVENTHAL:  How are you related to the

12   defendant?

13             >> Don is my son.

14             MR. LEVENTHAL:  Okay.  Mr. Hammalian, you heard that

15   the Court has received and reviewed a letter that you wrote to

16   the Court regarding your son in this case and its impact on

17   everybody.  You do have a few words you would like to address

18   to the Court at this time in addition to that?

19             >> Absolutely.

20             MR. LEVENTHAL:  Can you please address the Court?

21             >> As in addition, I would say this, Your Honor.

22   Obviously, I've known Don all his life.  This has been a

23   terrible, terrible ordeal for everybody in our family.  If

24   anybody had asked me two and a half years ago if I'd be here

25   today, I would say absolutely not.  But this past two years

1   has imposed unbelievable pressures, unbelievable sadness on

2   everybody, not only from the standpoint of the mistake that

3   was made, which I believe Don was just not thinking when these

4   things happened, but from the standpoint of the victims

5   themselves, not realizing what those victims had gone through

6   in terms of the production of this material.

7          So therefore, I say to you again, I've known this

8   kid forever.  He started his career in a good way.  And

9   everything went against him all of a sudden, the economy, the

10  mistake he made, and everything else was compounded.  And it's

11  had an unbelievable tragic affect on his young family.  I know

12  this would never happen again.  He's not that kind of a guy.

13  He's a good kid.  He's just compassionate.  He's sensitive.

14  He's a very happy guy.  And I am pleading for leniency at this

15  point.

16          THE COURT:  Thank you, sir.

17          >> Thank you.

18          MR. LEVENTHAL:  Okay.  Mr. Hammalian, your wife Pat

19  is present and in court today?

20          >> Yes.  I'm actually speaking for Pat, too.  I

21  should have mentioned that, yes.

22          MR. LEVENTHAL:  Okay.  And she's sitting, and just

23  waved to the Court.  Thank you very much, sir.

24          THE COURT:  Any question from the government?

25          MR. PEREZ:  No, Your Honor.

1          THE COURT:  Thank you, sir, for your appearance

2    here.

3          MR. LEVENTHAL:  Your Honor, I'd like to ask the

4    defendant to address the Court.

5          THE COURT:  All right.

6          MR. LEVENTHAL:  He can step forward.

7          THE COURT:  He needs to do so from the table.

8          MR. LEVENTHAL:  Okay.  And he's already been sworn,

9    Your Honor.

10          THE COURT:  All right.

11          THE DEFENDANT:  Good morning, Your Honor, and thank

12    you.  I apologize for --

13           THE COURT:  Counsel, you can have a seat.

14          MR. LEVENTHAL:  Mr. Hammalian, state your name

15    again.

16          THE COURT:  Counsel, you can have a seat.

17          MR. LEVENTHAL:  I can, thank you.

18          THE DEFENDANT:  Good morning, Your Honor.  Don

19    Hammalian, Jr.  I appreciate you listening to me briefly here.

20    And I apologize, I'm very nervous this morning and quite upset

21    that I've brought so many people into this situation.  I

22    realize that I've made a mistake in my actions.  And if I

23    thought for a moment that it would have any kind of -- if I

24    would have just stopped and thought of the impact it would

25    have on my family and the children that were in these

1    photographs, I would have not even looked at one photograph.

2    When I think of -- I haven't read any of the victim's

3    statements, but I realize the pain that they must have gone

4    through at the time, that they're still going through.

5              THE COURT:   Why haven't you read their statement?

6              THE DEFENDANT:   In the presentence report that I

7    received directly from Pre-Trial Services, it was not included

8    in the packet that I received.   It was mentioned that it was

9    provided to counsel directly.   I didn't know if I could face

10   the additional thought of knowing exactly what they went

11   through.   It's horrible enough for me to imagine what they've

12   gone through.   And if I could do anything to take away some of

13   that pain -- I know I could never do anything with them

14   directly, never apologize to them directly, but any kind of --

15             THE COURT:   Well, let me stop you, because I think

16   you need to hear what these victims had to say.   Please have a

17   seat.   The mother of the victim in the Vicki series writes --

18   and I won't read all of it, but she writes, "My daughter was

19   raped and sexually abused in so many horrible ways as a child

20   by her biological father.   He videotaped her abuse as he

21   ravaged, raped, and pillaged her ten-year-old body.   The sick

22   man shared these repulsive pictures and videos of her on the

23   Internet for perverts like himself to see.

24             The sexual abuse she suffered at the hands of her

25   father without a doubt started her agonizing pain, but this is

1  certainly not where her pain ends or mine.  Yes, the memories

2  or trauma of her abuse still haunt her and our family, but now

3  there is a new abuser.  The new abusers are the sick

4  individuals who download her pictures and enjoy watching her

5  being sexually assaulted as a child.  This sickens me.

6       Every time these pictures of my daughter are looked

7  at and passed around, the depraved people doing this are

8  furthering her pain, shame, and abuse.  They pass it around

9  like some dirty magazine when, in fact, it's the footage of an

10  abused, helpless child.  There are days when the pain from

11  this are unbearable for me.  These vile people increase her

12  pain and mine.  These are certainly not the hopes and dreams I

13  had for my little girl, this life of pain and shame."  And it

14  goes on extensively.

15       And then, Vicki writes, "My name is blank.  I am 19

16  years old and living every day with the horrible knowledge

17  that somewhere someone is watching the most horrific,

18  terrifying moments of my life without taking --" I'm sorry

19  "-- of my life and taking grotesque pleasure in them.  I am a

20  victim of the worst kind of exploitation, child porn.  Unlike

21  other forms of exploitation, this one is never-ending.  Every

22  day, people are trading and sharing videos of me as a little

23  girl being raped in the most sadistic ways.  They don't know

24  me, but they have seen every part of me.  They are being

25  entertained by my shame and my pain.

1          I had no idea that the Vicki series porn taken of me

2     had been circulated at all until I was 17, and my whole world

3     came crashing down one day.  Two years later, not much has

4     changed.  These past years have only showed me the enormity of

5     the circulation of these images and added to my grief and to

6     my pain.  What are they doing watching these videos anyway?

7     They're gaining sexual gratification from images of me at 10

8     and 11.  It sickens me to the core and terrifies me.

9          Just thinking about it now, I feel myself stiffen,

10    and I want to cry.  So many nights I have cried myself to

11    sleep thinking of a stranger somewhere staring at a computer

12    with images of a naked me on the screen.  I have nightmares

13    about it," and it goes on.  So that's the story.

14          Now, what do you have to say?

15          THE DEFENDANT:  Your Honor, I have a two-year-old

16    daughter, and I would never wish anyone to go through what

17    these victims have gone through.  And I made a mistake, and I

18    wish there was some way I could verbalize how horrible I feel

19    and apologize to them and I --

20          THE COURT:  What would you want me to do if the

21    defendant present before me was watching videos of your

22    daughter?

23          THE DEFENDANT:  That's a very difficult question,

24    Your Honor.

25          THE COURT:  No, it's not.  You don't want to answer

1    the question, but it's not a difficult answer.  You would want

2    them buried underneath the jail.

3              THE DEFENDANT:  I would want them to be penalized

4    and punished for their actions, and I would want them to

5    apologize to my family and to my child and to do anything in

6    their power to help stop -- I wanted to stop you from reading

7    that, Your Honor.  What can I do to help stop this?

8              THE COURT:  Would you want me to grant leniency to

9    them?

10             THE DEFENDANT:  Your Honor, I would want you to use

11   your best judgment based --

12             THE COURT:  It's a yes or no question.

13             THE DEFENDANT:  If -- I'm not sure of the word.  If

14   that was -- no, but yes.

15             THE COURT:  What's your plan for the future?

16             THE DEFENDANT:  I would want their situation to be

17   taken into consideration.

18             THE COURT:  A guy just like you, no prior criminal

19   history, not an evil person in his other activities, but in

20   this context, a very unsuitable character.

21             THE DEFENDANT:  Of course, Your Honor, my answer is

22   bias, because I am the one faced with this situation, but if

23   the person -- I'm a very forgiving person.  And if the person

24   truly felt remorseful and was willing to do whatever they

25   could to rectify the situation and possibly move on with their

```
 1   life to have some sort of impact on stopping this in another

 2   way, I would --

 3            THE COURT:  Now, you're not being honest,

 4   Mr. Hammalian.

 5            THE DEFENDANT:  I'm sorry?

 6            THE COURT:  Now you're not being honest.

 7            THE DEFENDANT:  Your Honor, I'm a very forgiving

 8   person.

 9            THE COURT:  Okay.

10            What is your plan for your future?

11            THE DEFENDANT:  Well, Your Honor, I plan to be the

12   best father I can and the best husband that I can.  I've

13   struggled over the last few years to grow my relationship with

14   my family, my wife, my parents, my child.  I'm the primary

15   caregiver for my child, and I treasure each day I have with my

16   family.  My future is to do what I can to give back, to get a

17   job, to give back to my parents, who have been so supportive

18   of me throughout this, and to not let myself get involved in

19   any type of action, these or otherwise.  I made a mistake.  I

20   made a big mistake.  And yes, I should have to pay for that

21   mistake.  But it kills me that other people have to pay for my

22   mistake -- Vicki, my family, my daughter.  I don't want them

23   to have to pay, too.

24            THE COURT:  People intend the natural consequences

25   of their purposeful actions.  You understand that, right?
```

1            THE DEFENDANT:  I'm sorry, Your Honor?

2            THE COURT:  People intend the natural consequences

3    of their purposeful behavior.  You understand that?

4            THE DEFENDANT:  I understand that, Your Honor.

5            THE COURT:  Thank you.  You may be seated.

6            Counsel.

7            MR. LEVENTHAL:  Thank you, Your Honor.

8            The defendant's wife, Mindy, is present.  I know

9    she's written a letter.  She has a few comments she would like

10   to make to the Court, if she can step forward.

11           THE COURT:  She may.

12           Please come forward to be sworn.

13           DEPUTY CLERK:  Please step up into the witness box

14   and remain standing.  Please raise your right hand.  Do you

15   solemnly swear the testimony you'll give in this case will be

16   the truth, the whole truth, and nothing but the truth, so help

17   you God?

18           >> Yes.

19           DEPUTY CLERK:  Please state your name for the

20   record.

21           >> My name is Melinda Anne Hammalian, and I am the

22   wife of Donald Hammalian, Jr.

23           DEPUTY CLERK:  Please take a seat.

24           THE COURT:  You're under oath, Ms. Hammalian.  You

25   must give truthful answers to the questions that are asked.

1    If you give false answers or false statements, you face

2    penalties of perjury, false statement, and obstruction of

3    justice.  Do you understand that?

4              >> Yes, ma'am.

5              THE COURT:  Counsel, you may proceed.

6              MR. LEVENTHAL:  Thank you.

7              Mrs. Hammalian, you requested that I request the

8    Court to allow you to make a personal statement live and

9    beyond what is in your letter?

10             >> Yes.

11             MR. LEVENTHAL:  Do you have a statement that you

12   would like to make to the Court?

13             THE COURT:  Ms. Hammalian, you have to speak into

14   the microphone.

15             >> Yes, I would.

16             MR. LEVENTHAL:  Okay.  And you can't do a nod of the

17   head.  They can't take that down.  So, you would like to make

18   a statement?

19             >> Yes.

20             MR. LEVENTHAL:  Would you please address the Court

21   at this time loud enough so that everybody can hear you.

22             >> Yes.  Pardon me.  I wrote this down, so I make

23   sure I cover everything I wanted to.  Thank you for listening,

24   Judge Scriven.  I've already written you a letter, but this is

25   just to reiterate some of what was in the letter, plus I put

1    some personal feeling behind what I'd like to say in regards

2    to my husband.

3            Don is the sole caretaker right now of our daughter

4    while I work two jobs, about 50-plus hours a week.  If Don is

5    taken out of our life at this point, I would not be able to

6    work, which would not bring any income into the family.  We

7    have some options, but it most likely would mean that we would

8    have to run around with a lot of government assistance to make

9    ends meet and to just live our daily lives, because child care

10   is more than affordable right now.

11           But beyond that, Don is an excellent father to our

12   child.  I mean, we both make parenting decisions, but I rely

13   on him so much on being a father figure and making sound

14   judgments in regards to parenting our daughter and bringing

15   her up, and I absolutely trust him with her care.  And I sit

16   by his side through this entire thing.  I support him.  I love

17   him.  I generally feel his heartache in all this and know he

18   is truthfully very upset and remorseful through this whole

19   thing.

20           We are aware of all the innocent people that have

21   been affected by this, and it hurts my heart that they had to

22   go through this and that -- but to be a little biased, I'm

23   also worried about another innocent person, our child, who has

24   the possibility of growing up without a father in her life, a

25   father who actually loves her and wants to be there for her

1    and wants to protect her unlike, unfortunately, many other

2    children out there.  And I'm worried about her and having to

3    raise her as a single parent and not having my husband there

4    every day to be my support and to be her support.

5         So, I do trust your judgment.  I do trust what you

6    decide, and I put my faith in you.  But I am, of course,

7    asking for leniency based on what I see every day from him in

8    regards to this, how upset he is over this entire ordeal and

9    how much he is very remorseful, but thank you very much for

10   hearing me out today.

11        THE COURT:  Thank you.

12        >> And I appreciate it.

13        THE COURT:  Thank you.

14        MR. PEREZ:  No questions, Your Honor.

15        MR. LEVENTHAL:  May she take her seat again?

16        THE COURT:  You may step down.

17        >> Thank you.

18        MR. LEVENTHAL:  I have no further witnesses.  I do

19   have a few brief comments, if this is the appropriate time,

20   Your Honor.

21        THE COURT:  Yes, sir.

22        MR. LEVENTHAL:  I've known the Hammalian family for

23   quite awhile now through this process and for watching, to me,

24   an evolution of trying to explain what happens, the

25   consequences of if you do something that you don't think, you

1    don't think things through, and that you are responsible for

2    the consequences and everything that flows from your acts.

3    And Mr. Hammalian, quite awhile ago, came to grips with that,

4    not only the consequences to himself, of course, his family,

5    his loved ones who did nothing to deserve what could be

6    brought upon them, but most of all to the individuals whose

7    images were depicted, the information that was downloaded into

8    his computer.

9            I don't know about other cases that have come before

10   the Court.  This is the type of conduct that is more

11   prevalent, it's being charged more by the government than ever

12   before.  I've tried to analyze Mr. Hammalian's conduct best I

13   could as compared to cases that I've read about, that I have

14   no personal knowledge, but have read about, questions that I

15   have about does he fit within the heartland of the statute and

16   the types of punishment that have been authorized by the

17   Sentencing Commission, even though it is advisory,

18   understanding that it may be one day sooner than later that

19   there'll be changes made to the guidelines and recognition

20   that there are different levels of involvement in this type of

21   conduct, but that's not before the Court at this time.  We

22   understand that, Your Honor.

23           But what did Donald Hammalian do that is either

24   worse or not as bad as the normal defendant who gets involved

25   in this?  As I understand it, there were four days involved in

1    the time period that was examined by the computer expert for

2    the government, four download days, two in November of '05 and

3    two in March of '06.  But the downloads were thumbnails, the

4    teeny little pictures.

5           And, to the best of my knowledge, the thumbnails

6    were not opened nor were they ever revisited again by the

7    defendant.  They weren't organized, put into subfiles like a

8    lot of individuals, who I think are really sick, sick people

9    beyond the average individual that is morbidly curious with

10   this kind of stuff, but no subfiles, no names to the files,

11   and apparently that's fairly standard in these type of cases.

12          That doesn't take away one bit from the fact that

13   what he did was a crime.  He understands that.  He wouldn't be

14   before the Court, he wouldn't have accepted responsibility for

15   his conduct, and he wouldn't be involved in the criminal

16   justice system, but it's a footnote to this is how Donald

17   Hammalian committed the offense for which he has pled guilty,

18   Your Honor.  And I would like for the Court to please take

19   that into consideration.

20          I understand that there are certain factors under

21   Section 3553 that the Court can take into consideration, if it

22   chooses to, because the Court does have discretion.  The

23   guidelines are advisory.  The reasons we have judges that are

24   human beings and that we don't have some robot just spewing

25   forth what the guidelines are is that every individual is

1    somewhat different from another, and every factual situation

2    is somewhat different from another factual situation.

3            And the Hammalian family and I would like for the

4    Court to just please take that into consideration when

5    determining what would be the fairest sentence for the public,

6    what would be a sentence that deters others, what would be a

7    sentence that deters Mr. Hammalian from further conduct.  And

8    I don't think the Court would ever have to worry about Donald

9    Hammalian ever again.  But in fashioning a sentence the Court

10   has a lot to consider, and that's why I bring these issues

11   before the Court.

12           There isn't anymore that one could say.  I honestly

13   believe that Donald Hammalian's conduct and attempt to answer

14   the Court's questions were genuine.  He's exhibited the same

15   behavior before me in my office on numerous occasions, long

16   before this day came, Your Honor.  So, I think that his grief

17   at what he's done to others, innocent others, including the

18   people whose pictures are on the computer, his wife, his

19   mother, his father, his in-laws, and his daughter, are

20   heartfelt.

21           Thank you, Your Honor.

22           THE COURT:   Thank you.

23           Counsel.

24           MR. PEREZ:   Briefly, Your Honor.

25           As to the offense conduct, I'm not going to say

1  anything other than what's contained in the presentence

2  report, the notice of essential elements, and the records

3  filed with this court.  The government acknowledges that the

4  United States Sentencing Guidelines are advisory and that the

5  Court has discretion to impose a sentence below what is

6  required pursuant to the now advisory guidelines.  But in

7  order for the Court to impose an appropriate sentence, as the

8  Court already stated, the Court must consider the sentencing

9  factors as detailed in Title 18, Section 3553.

10       If we look at the defendant's personal

11  characteristics, that is definitely positive for the

12  defendant.  On the one hand, we have a defendant who, based on

13  what we know, has a very loving and supportive family.  We

14  have a defendant who had all the opportunities to avoid being

15  before this court to be sentenced, not for the mistake he

16  made, because what he did was not a mistake.  What he

17  committed was a criminal act.  These things do not happen by

18  mistake.  People go online to actually look for child

19  pornography.  The defendant downloaded child pornography.

20       I don't need to expand on what the actual victims of

21  child pornography submitted to the Court.  But one must think

22  what would happen or what would I say if that were to happen

23  to my daughter.  I know what I would do.  I would be before a

24  judge probably sentenced for what I did to the individual who

25  would think about putting a finger on one of my children.  We

1     also have to look at the other sentencing factors.

2            THE COURT:  Is it true that the defendant did not

3     open the files after the initial download?

4            MR. PEREZ:  No, Your Honor.  We can support that

5     forensically that he actually had files on CDs that were

6     seized due to the execution of the search warrant.

7            THE COURT:  These were files that were on the

8     original download?

9            MR. PEREZ:  Let me ask the forensic examiner.

10           THE COURT:  All right.

11           (Brief pause in proceeding.)

12           MR. PEREZ:  Your Honor, most of the videos on the

13    DVDs related to a prior incident.

14           THE COURT:  Not the one charged in this case?

15           MR. PEREZ:  Not the one charged in this case.

16           THE COURT:  But involving this defendant?

17           MR. PEREZ:  Involving this defendant, correct.

18           THE COURT:  So, he wasn't charged for all of his

19    conduct?

20           MR. PEREZ:  Correct.

21           THE COURT:  As to the files that are charged in this

22    offense, is there any evidence that he opened these files?

23           (Brief pause in proceeding.)

24           MR. PEREZ:  He's going to look at his report.

25           THE COURT:  And it was the two days that are the

1    subject of this offense charged?

2              MR. PEREZ:  About four days, Your Honor.  We would

3    have proven at trial that he actually accessed that web site

4    during the period of time charged in the indictment in this

5    case.

6              THE COURT:  Accessed it how many times?

7              MR. PEREZ:  At least on two occasions.

8              THE COURT:  And is it true that the files were not

9    organized and that they were not named and they were not

10   categorized?

11             MR. PEREZ:  That is true.  That is true as far as it

12   pertains to the incident charged in the indictment.

13             (Pause in proceeding.)

14             Yes, Your Honor, the forensic examination revealed

15   that they were all temporary Internet files, which means that

16   at some point and time they were viewed, but they were not

17   reopened again.  What that shows is that the defendant was

18   actually on the web site, because he was -- meaning that the

19   defendant subscribed to get access, to gain access to the

20   server.

21             THE COURT:  So, this is not an accidental coming

22   upon these images.  This is a subscribed service where you

23   have to pay a fee to be able to access these images.

24             MR. PEREZ:  Yes, Your Honor.

25             THE COURT:  And at that point that you enter your

1    credit card, you know what you're buying.

2              MR. PEREZ:  Yes, Your Honor.

3              So, this is not by accident.  The defendant also had

4    DVDs with child pornography.  And the next logical step is to

5    ask why would one like to maintain a collection of child

6    pornography?

7              THE COURT:  Where were the DVDs located?

8              MR. PEREZ:  They were in his home office locked in a

9    briefcase that the defendant opened for the agents executing

10   the search warrant.

11             THE COURT:  And how many were there?

12             MR. PEREZ:  Approximately six, six containing child

13   pornography.

14             THE COURT:  Thank you.

15             Anything further from the defense?

16             Anything further from the prosecution?

17             MR. PEREZ:  No, Your Honor.

18             MR. LEVENTHAL:  I have nothing further.

19             Thank you, Your Honor.

20             THE COURT:  So, the government is opposing the

21   Court's consideration of the sentencing factors and reducing

22   the guideline sentence or it's not?

23             MR. PEREZ:  Yes, Your Honor.  We are recommending an

24   advisory guideline sentence.

25             THE COURT:  And the defense requests what specific

1    sentence under the guideline?

2            MR. LEVENTHAL:  The defendant is simply requesting

3    that the Court take into consideration the totality of the

4    defendant's conduct, understanding that his conduct is a

5    crime, but how the conduct was committed and other factors

6    that have been presented in writing in the presentence report

7    and by live testimony as to the defendant's character, his

8    involvement with his family.  And it asks that the Court

9    consider those 3553 factors in fashioning a sentence that may

10   be outside the heartland of a Level 26.

11           Even though the government has recommended a low

12   end, I would ask that the Court consider something less than

13   that.  I think that Mr. Hammalian, he agrees, needs to be

14   punished.  There's no way around that.  But the quicker that

15   he can get back to his family and be productive, I think that

16   it helps all of society knowing that he was punished and

17   knowing that he has been able to pull himself together and

18   actually be a productive part of our community.

19           THE COURT:  In regard to the totality of the

20   circumstances, what is the story with the videos in his

21   briefcase?

22           MR. LEVENTHAL:  I'm sorry, Your Honor?

23           THE COURT:  In regard to the totality of the

24   circumstances, what is his explanation to the possession of

25   the videos, the DVDs of child pornography?  That was a

1   mistake, too?

2           MR. LEVENTHAL:  Well, if I understand, the scoring

3   that he received for the possession of the child pornography

4   and the DVDs -- I think there were, if I understood it, six

5   DVDs -- there was no evidence, according to our forensic

6   expert, that the DVDs were ever sent anywhere, were ever

7   copied, were ever sent on to another human being.  They were

8   sitting in a locked case in the defendant's apartment.

9           THE COURT:  Well, this is a possession case.

10          MR. LEVENTHAL:  I'm sorry?

11          THE COURT:  This is a possession case, not a

12  distribution case.

13          MR. LEVENTHAL:  No, it is.  I understand that.

14          I believe that the defendant's acknowledgment of his

15  involvement, his cooperation on the date of the search,

16  together with, again, how he committed the offense, again this

17  court hears these cases all the time, unfortunately, and I

18  believe that Mr. Hammalian's conduct and what he didn't do

19  with the pornography, realizing what he did was a crime, he

20  understands that.

21          But so many of the people that get involved with

22  this organize it, review it over and over again.  These

23  thumbnails that came in were in the computer and they stayed

24  there.  That's the crime.  He downloaded them.  He didn't go

25  back.  He didn't reopen them.  He didn't view them constantly.

1    They came in on a particular date.  They stayed in the

2    temporary Internet file.  And that's where they were when the

3    government seized his computer.

4            THE COURT:   Thank you.

5            (Pause in proceeding.)

6            The Court has asked the defendant why judgment

7    should not now be pronounced, and having heard the defendant's

8    response and the government's response, the Court has found no

9    cause to the contrary.  The parties have made statements in

10   their own behalf.  As well, the defendant has introduced the

11   testimony of his father on behalf of himself and his wife and

12   has introduced the testimony of his own spouse, as well as a

13   host of letters of family and friends in support of his

14   request for the Court to offer some leniency in the imposition

15   of sentence.  The Court has additionally considered the victim

16   statements filed as a part of this matter for those actual

17   known victims of the offense charged.

18           The Court, pursuant to Title 18, United States Code,

19   Section 3551 and 3553 and the Sentencing Reform Act of 1984 is

20   duty-bound to consider both the statutory mandatory penalties

21   in the case, the maximum penalties applicable in the case, as

22   well as the 3553(a) factors, which the Court has been

23   permitted to consider as the guidelines are purely advisory.

24           And having taken into account all of those factors

25   and the statements of the defense, the Court considers that

 1   insofar as the characteristics of this defendant are

 2   concerned, he has no prior substantial criminal history except

 3   one incident of theft for which he paid his limited debt to

 4   society.  He has no evidence of any habitual behavior with

 5   respect to this abhorrent event which, apparently, by

 6   everyone's admission occurred over a short-term period of

 7   time.  He does not exhibit the type of ingrained behavior that

 8   is consistent and intense that we see with many sexual

 9   predators who satisfy part of their predatory behavior through

10   child pornography in which it is deemed that they review

11   repeatedly their pornography, organize their pornography, name

12   their files, name their victims, and so forth.  There's no

13   evidence of that in this case.

14           It appears that he accessed this information by the

15   forensics on two occasions.  That's what the government says

16   it would have been prepared to prove.  Additionally, the

17   defendant has substantial familial support represented in this

18   matter such that the Court is confident that its imposition of

19   sentence would be sufficient in that upon his incarceration

20   and return to the community that there is a substantial

21   likelihood that he would be properly rehabilitated and would

22   not continue to engage in this type of behavior, having seen

23   its impact on himself and his family members.  The Court also

24   considers the defendant's apparent considerable remorse for

25   his conduct and his full cooperation and admission of

1   liability and acceptance of responsibility immediately upon

2   being confronted with his illegal conduct.

3           Therefore, Mr. Hammalian, the Court is prepared to

4   impose sentence in this case, if you would please stand.

5   Based upon the Court's consideration of the offense charged,

6   the penalties associated with the charge, the presentence

7   report, the Court's consideration of the statutory sentence

8   and the 3553(a) factors, the Court orders that the defendant

9   is committed to the custody of the Bureau of Prisons for a

10  term of imprisonment of 48 months.

11          Upon release from imprisonment, he will be placed on

12  a term of supervised release for 20 years.  The mandatory drug

13  testing requirements of the Violent Crime Control Act are

14  waived.  And the Court orders the defendant, though, to submit

15  to drug testing at the behest of the Probation Office not to

16  exceed 104 tests per year.  Sir, you may be seated.

17          While on supervised release, you must comply with

18  the standard conditions adopted by the Court in the Middle

19  District of Florida.  In addition, you shall comply with the

20  following special conditions:  You shall participate in a

21  mental health program specializing in sexual offender

22  treatment and submit to polygraph testing for treatment and

23  monitoring purposes.  You shall follow the probation officer's

24  instructions regarding the implementation of this directive.

25          Further, you shall contribute to the cost of such

1   treatment and/or polygraphs not to exceed an amount determined

2   reasonable by the Probation Office, based upon your ability to

3   pay or the availability of third party payment in conformance

4   with the Probation Office's sliding scale for treatment in

5   connection with these types of offenses.

6           You must register with the state sexual predator

7   registration agency in any state where you reside, visit, are

8   employed, carry on a vocation or are a student as directed by

9   the Office of Probation.  The probation officer shall provide

10  state officials with all the information required under the

11  Florida sexual predator and sexual offender notification and

12  registration statutes and under the Sexual Offender

13  Registration Notification Act, and may direct you to report to

14  these agencies personally for required additional processing,

15  such as photography, fingerprinting, and DNA connection.

16          You will have no direct contact with any minors

17  under the age of 18 without the expressed written approval of

18  the Office of Probation, except for contact with your

19  daughter.  And you shall refrain from entering any place where

20  children frequently congregate, including schools, day care

21  centers, theme parks, playgrounds, et cetera.  You are

22  prohibited from possessing, subscribing to, or viewing any

23  video, magazines, or literature depicting children in the nude

24  or in sexually explicit positions.

25          You will not possess a computer with access to any

1   online service at any location without prior written approval

2   of the Office of Probation.  This includes your place of

3   employment.  This includes access to Internet service

4   providers, bulletin board systems, or public or private

5   computer network systems, telephones or other hand-held

6   devices.

7          You shall permit routine inspection of your computer

8   system, hard drives, and other media storage materials to

9   confirm adherence to this condition.  This inspection will be

10  no more intrusive than is necessary to ensure compliance with

11  this condition.  You must inform your employer or any third

12  party who may be impacted by this condition of this

13  computer-related restriction and the computer inspection

14  provisions of this condition.

15         You shall always be available to submit to a search

16  of your person, residence, place of business, any storage

17  units under your control, computer, or vehicle conducted by

18  the Office of Probation at a reasonable time and in a

19  reasonable manner or their designee based upon reasonable

20  suspicion of contraband or evidence of a violation of a

21  condition of release.

22         If you fail to submit to such a search, this may be

23  grounds for revocation of the terms and conditions of your

24  supervision.  You shall inform any residents of any premises

25  on which you reside that their premises are subject to search

1    pursuant to this condition.  If they fail to waive your right

2    against search and seizure to permit the search, you may not

3    reside there.

4          You shall cooperate in the collection of DNA as

5    directed by the Office of Probation.  Based upon the Court's

6    consideration of your limited financial status and the

7    financial impact of this case already on your affairs, the

8    fine in this case is waived.  You will pay the special

9    assessment of $100, which is due immediately.  You must also

10   forfeit those assets previously identified in the indictment

11   that are subject to forfeiture based upon the government's

12   findings and allegations.

13         After considering the advisory Sentencing Guidelines

14   and all of the factors identified in Title 18, United States

15   Code, Sections 3553(a)(1) through (7), the Court finds that

16   the sentence imposed is sufficient, but not greater than

17   necessary to comply with the statutory provisions of

18   sentencing consistent with its findings here, including any

19   departures from the guideline.

20         You are remanded to the custody of the United States

21   Marshal to await designation by the Bureau of Prisons.  There

22   was a request that the defendant be allowed to self-report in

23   this regard.  What is the government's position with respect

24   to that?

25         MR. PEREZ:  We're recommending that he be remanded,

1    Your Honor.

2            THE COURT:   Counsel?

3            MR. LEVENTHAL:   Your Honor, I did file a motion upon

4    receipt of Donna Wiebe's memorandum that is part of the court

5    file regarding his Pre-Trial Services status.   The defendant

6    has been on release since the summer of last year without even

7    electronic monitoring.   He's been a model individual, and he

8    has complied with everything that Donna Wiebe has asked that

9    be done.   He's been allowed some limited family travel without

10   incident.

11           It's my understanding, and I don't know the custom

12   of this Court, as I understood the reasoning that Donna Wiebe

13   set forth and the statute that she cited, the Court still has

14   the ability by clear and convincing evidence to make a

15   determination that the defendant does not pose a risk to the

16   community or any person in the community nor does the

17   defendant pose a risk of flight.

18           I think he's amply shown that he is not a risk on

19   either of those two prongs, and I ask that the defendant be

20   allowed to remain at home on other type of monitoring,

21   including electronic monitoring, until he receives a

22   designation from the Bureau of Prisons.   That could take four

23   to eight weeks.   And again, I don't think that there is any

24   threat.   I believe that there are judges within this division

25   that have allowed that.   Again, I don't know the Court's

1    custom.  And I make the argument based solely on the

2    particular facts of Donald Hammalian's compliance with all

3    court orders.

4            THE COURT:  All right.  The Court denies the

5    request.  It is the statutory preference that a defendant,

6    once he has been convicted and duly sentenced where there is

7    no appeal pending or basis to delay incarceration, that he be

8    remanded to the United States Marshal's Office to await

9    designation by the Bureau of Prisons.  The circumstances

10   substantially change once the defendant knows the reality of

11   the situation as opposed to those circumstances in which he

12   might contemplate some substantial leniency.  And the risk of

13   flight increases substantially once that penalty has been

14   imposed, at least in this Court's mind, so the motion is

15   denied.

16           The Court, having now pronounced sentence, does

17   counsel for the defense or the government have any objection

18   to the sentence or to the manner in which the Court pronounced

19   sentence, other than those previously stated for the record?

20           MR. PEREZ:  No, Your Honor.

21           MR. LEVENTHAL:  No, Your Honor.

22           THE COURT:  Sir, you are now advised that it is your

23   right to appeal from this sentence within ten days from this

24   date or from the date that judgment is recorded, whichever is

25   later.  If you fail to appeal within the ten-day period, it

1   shall forever be a waiver of your right to file an appeal.

2   The government may file an appeal from this sentence, which

3   might expand your right to appeal your sentence in this case.

4   You are advised that you're entitled to the assistance of

5   counsel in taking an appeal, if you cannot afford to take an

6   appeal at your own expense.

7           This defendant pled on the plea agreement or

8   straight out?

9           MR. PEREZ:  Straight plea, Your Honor.

10          THE COURT:  All right.  Is there anything further in

11  this matter from the government?

12          MR. PEREZ:  No, Your Honor, thank you.

13          MR. LEVENTHAL:  No, Your Honor.  Thank you very

14  much.

15          THE COURT:  Godspeed to the Hammalian family.  I

16  know you have been put through a great ordeal in connection

17  with this matter.  And the Court regrets the circumstances

18  that you will face in this period of separation from your

19  family.  The Court would request that the defendant seriously

20  take his efforts to be rehabilitated and that Ms. Hammalian

21  protect the interest of her young child over the interest of

22  her husband, because people who are pedophiles are hard to

23  cure, and a person who possesses child pornography and is

24  caught possessing child pornography gives you a clear

25  indication of their intent where young children are concerned.

1              We are dismissed.

2              (Concluded at 12:08 p.m.)

3                    _ _ _ _ _ _ _ _ _

4                           CERTIFICATE

5    I HEREBY CERTIFY THAT THE FOREGOING IS AN ACCURATE

6    TRANSCRIPTION OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7    S/Koretta Stanford        2-11-10
     _____
8    Koretta Stanford         Date
     Official Court Reporter
9    (407) 872-1715

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25